**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN GONZALEZ | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, Commissioner | : | NO. 05-4945 |
| of the Social Security Administration, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM

**Baylson, J.**                                                        **August 24, 2006**

Plaintiff Evelyn Gonzalez ("Plaintiff" or "Gonzalez") seeks judicial review of the

decision of the Commissioner of the Social Security Administration denying her claim for

disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f ("the Act").  Presently before

this Court are the parties' cross-motions for summary judgment.  For the reasons stated below,

Plaintiff's motion will be granted in part.

**I.**       **Background and Procedural History**

Plaintiff Gonzalez, a 41 year old woman with a high school education, was last employed

as a housekeeper, work she had done for eight years.  Regarding DIB, she had earned sufficient

quarters of coverage to remain insured at least through the date of the ALJ's decision, issued on

May 25, 2005. (R. at 55).  She originally filed for Social Security disability insurance benefits on

or about August 28, 2003,  alleging she became disabled on June 19, 2003 while lifting a heavy

trash can at work (R. at 19, 655, 127, 180, 183).

After Plaintiff's claim was initially denied, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 55).  A hearing was held before ALJ Mark Newberger ("ALJ Newberger" or "the ALJ") on October 26, 2004 (R. at 55).  On May 25, 2005, ALJ Newberger denied Plaintiff's claim (R. at 55-71), concluding although she could not perform her past relevant work as a housekeeper, she was not "disabled" within the meaning of the Act because she could perform certain other work in the national economy. (R. at 70).  After the Appeals Council denied Plaintiff's request for review, Plaintiff sought judicial review of the Commissioner's decision in this Court.  She filed a motion for summary judgment on February 27, 2006 (Doc. No. 29) and Defendant, the Commissioner of the Social Security Administration ("Commissioner"), filed a cross-motion for summary judgment on March 29, 2006 (Doc. No. 10).  Plaintiff then filed a Reply in Opposition to the Commissioner's motion on April 11, 2006 (Doc. No. 11).

### A.      Plaintiff's Subjective Complaints and Activities

Plaintiff asserts her injury resulted in constant stabbing low back pain, shooting pain down both legs, but particularly her right leg, and arm numbness, particularly on the right. (R. at 24-25, 32, 35-36).  She states she can only stand and/or walk for between five and fifteen minutes, the furthest she can go is about a block, and she has to take pain medication daily. (R. at 26, 32, 41)

Ms. Gonzalez contends that because of the pain, she only sleeps four hours per night, and naps during the day. (R. 34).  Otherwise, she watches TV, lies down, or does crossword puzzles. (R. at 29).  She cooks light meals for her two children, drives them short distances, and

occasionally watches her daughter do karate. (R. at 29-31, 43).  Further, Plaintiff states she has trouble bathing, and dressing because of pain, and that her daughter does the laundry while her son takes out the trash. (R. at 30, 35, 38).  Plaintiff also has handicapped plates on her car, and reports that she had a full bathroom installed on the first floor of her house to accommodate her limitations. (R. at 38-40).  Finally, she states she has gained 35 to 40 pounds since her injury. (R. at 16).

      **B.**      **History of Treatment**

            **1.**      **Diagnostic Findings**

Plaintiff had two MRIs and two x-rays on the lumbar spine, which confirmed disc herniations at L3-4 and L4-5.

Specifically, the July 13, 2003 MRI revealed a generalized disc bulge associated with small focal central disc herniation, causing mild mass effect on the thecal sac at L3-L4.  At L4-L5, there was a small central and parcentral disc herniation causing mild mass effect of the thecal sac and mass effect on the exiting right L5 nerve root.  At L5-S1, there was a very minimal generalized disc bulge without significant effect on the thecal sac. (R. at 199-200).  The second MRI, on October 2, 2004, as compared to the prior MRI, showed progressive small focal central disc herniation at the L3-L4 and L4-L5 levels without significant central canal stenosis or facet arthritis (R. at 279).  The results of the first lumbosacral x-ray on February 24, 2004 were normal (R. at 269).  The second, on December 6, 2004, revealed degenerative discogenic disease at L3-L4 (R. at 295).

A July 21, 2003 cervical spine MRI revealed "no definite disc herniation or significant stenosis," but minimal disc bulge at the C4-5 level.  The report indicates, however, that "sagittal

FSE-T2 weighted images are significantly degraded by patient's motion." (R. at 198).  The results of a cervical spine x-ray on February 24, 2004 were normal (R. at 269).

Finally, impressions from a September 13, 2003 MRI of the thoracic spine showed no significant cord compression, or large disc herniation, but revealed a small right paracentral osteophyte causing a mild effacement of the thecal sac without significant narrowing of the neural foramina. (R. at 196).

On November 18, 2004, related to her complaints of numbness and weakness in the right hand and arm and neck pain, Plaintiff had a nerve conduction study and electromyography ("EMG") test.  These studies revealed abnormal results and confirmed that Plaintiff had moderate to severe carpal tunnel syndrome on the right side and mild radiculopathy on the right. (R. at 292-93).

### 2.    Medical Examinations

#### b.    Treating Physicians

##### i.    Dr. Myron Rodos, M.D.

Plaintiff's family physician is Dr. Myron Rodos.  According to progress notes, Plaintiff saw Dr. Rodos at least five times between January and September, 2004 for neck and low back pain (R. at 258-263).  Dr. Rodos diagnosed her with discogenic lumbar radiculopathy, low back symptomology, paravertrabral spasm, as well as cervical spine subluxation.  On April 14, 2004, he reported that she was "unable to work," and on September 30, 2004, he referred her for an MRI (R. at 258-63).

Based on his examinations and MRI results, Dr. Rodos completed a Medical Source Statement of Plaintiff's Ability to Do Physical Work-Related Activities.  He concluded that

lifting/carrying was limited to less than ten pounds, standing/walking less than two hours, sitting

less than six hours of an eight hour workday, limited pushing, pulling, reaching and handling,

and could not engage in any postural activities. (R. at 280-83).

### ii.    Dr. Sofia Lam, M.D.

Dr. Rodos referred Plaintiff to treating physician Dr. Sofia Lam, a specialist in pain

management.  Included in the record are medical records covering the period between August 13,

2003 to July 12, 2004, during which time Plaintiff saw Dr. Lam for neck and lower back pain

which radiated to her lower extremities.  On August 13, 2003, she diagnosed Plaintiff with

discogenic lumbar radiculopathy and mechanical low back symptomology with lumbar facet

arthropathy and paravertrabral spasm (R. at 213-14).  She recommended facet joint and lumbar

epidural injections, which Plaintiff underwent on that date, as well as four other times between

September and December 2003, but which according to Plaintiff provided no long standing

relief.  (R. at 197, 210-12, 245-48).

With similar complaints, Plaintiff Gonzalez returned to Dr. Lam on February 26, 2004,

who made the same diagnosis as at the prior visit, and again recommended steroid injections.

Dr. Lam advised Plaintiff's attorney that Plaintiff was a reliable historian without any evidence of

symptom magnification, that she believed that Plaintiff's injuries were work-related, and that

Plaintiff had significant disability due to her diagnosis (R. at 241-43).

On June 1 of that same year, Dr. Lam reported to Dr. Rodos that Plaintiff had

exacerbation of significant low back discomfort, that she was having difficulty with simple

activities of daily living, and lifting or carrying anything heavier than five pounds aggravated her

discomfort.  Lam stated that various treatments had failed, but that Gonzalez was a good

candidate for facet joint treatment.  After consultation with her, they decided to proceed with

facet nerve blocks.  Again, Dr. Lam noted there was no evidence of symptom magnification. (R.

at 239).

On June 8, 2004, Dr. Lam completed a Medical Source Statement of Plaintiff's Ability to

Do Physical Work-Related Activities.  She concluded that Gonzalez could occasionally lift and

carry objects weighing ten pounds, that she could stand and/or walk less than two hours in an

eight-hour workday, and could not engage in any postural activities.  Lam also indicated that

Plaintiff's ability to sit and push and/or pull was affected, that she could occasionally engage in

handling but could not engage in reaching, and that temperature, vibration and humidity

variations impacted her condition. (R. at 283-86).

On July 12, 2004, Progress notes from that day indicate that on the right side, Gonzalez

was having good results, diminished pain symptoms, and improved range of motion since her last

treatment.  Regarding the left, Gonzalez underwent another lumbar facet joint injection. (R. at

237-38).

### iii.      Dr. Rafael Revol, M.D.

At Dr. Rodos' request, Dr. Rafael Revol, M.D. conducted a neurological evaluation of

Plaintiff on November 13, 2004 because of her complaints of anxiety, depression, headaches,

neck and lower back pain.  Upon examination, he concluded that she failed to show any signs for

increased intracranial pressure of focal lateralizing, but scheduled a CT-scan because of her

persistent headaches.  He also indicated that results of Phalen's test (a manual examination

performed to diagnose carpal tunnel syndrome) were negative, but that because of the numbness

in her hands, he scheduled an EMG.  Following the November 2004 EMG which showed

-6-

moderate to severe carpal tunnel syndrome on the right side and mild radiculopathy on the right,

Dr. Revol recommended surgery for the right carpal tunnel syndrome. (R. at 292-93).

### b.     State Consultative Evaluations

Additionally, after Gonzalez applied for Social Security benefits, she was subjected to

two additional consultative evaluations by state physicians.

### i.     Dr. Horacio Buschiazzo, M.D.

Plaintiff was first referred to Pennsylvania Bureau of Disability Determination Dr.

Horacio Buschiazzo on December 13, 2003 for a consultative examination.  He concurred with

Plaintiff's treating physicians regarding the extent of limitations posed by Plaintiff's injuries.

Specifically, Buschiazzo diagnosed Gonzalez with lumbosacral spine discogenic disc disease

with symptoms of bilateral radiculopathy of the lower extremities, as well as with possible

discogenic disc disease of the cervical spine, reactive chronic anxiety, depression, and obesity.

(R. at 201-04).  He also concluded she had severe limitation of lumbar range of motion. (R. at

208).  Additionally, in a Medical Source Statement of Claimant's Ability to Perform Work-

Related Physical Activities, he opined that Gonzalez could lift and carry objects weighing two to

three pounds frequently and ten pounds occasionally, that she could stand and walk for one hour

or less and could sit for less than six hours, a half-hour at a time.  He also indicated she did not

have any pushing or pulling limitations, and could occasionally bend and could frequently kneel,

stoop, crouch, balance and climb. (R. at 205-06).

### ii.     Dr. Mary Ryczak, M.D.

In January, 2004, Plaintiff saw a Dr. Mary Ryczak, who reviewed Plaintiff's medical file

and assessed her residual functional capacity.  She concluded that Plaintiff was capable of light

exertion work,[1] indicating Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, could stand and/or walk about six hours in an eight-hour workday, could sit about six hours in an eight-hour workday, and had an unlimited ability to push and/or pull.  She also opined that Gonzalez could frequently engage in postural activities like balancing, stooping, kneeling, crouching and crawling, as well as occasionally engaging in balancing activities.  Dr. Ryczak also concluded Gonzalez did not have any manipulative or environmental limitations. (R. at 215-222).[2]

### c.    Other Physicians

#### i.    Dr. J. Covington, M.D.

On July 1, 2003, a Dr. J. Covington diagnosed Plaintiff with lumbosacral strain, and prescribed three weeks of physical therapy.  (R. at 165).  On August 8, 2003, again referring her to physical therapy, Dr. Covington diagnosed her with cervical sprain, and a lumbar sprain with a bulging disc (R. at 175).

#### ii.    Dr. Jonathan B. Levyn, D.O.

Office notes indicate Plaintiff received treatment from Dr. Jonathan Levyn between June 25, 2003 and April 16, 2004 for lower back pain, headaches, pain in both knees, and numbness in

---

[1]The Social Security Regulations classify jobs as sedentary, light, medium, heavy, and very heavy.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities . . . [which includes lifting, "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."].  If someone can do light work, we determine that he or she can also do sedentary work."  20 C.F.R. § 404.1567.

[2]A state agency psychologist, Fran M. Mrykalo, Ed.D. also went over Gonzalez' record and completed a psychiatric review technique form on January 20, 2004. (R. at 223-35).  However, this report is not a subject of the parties cross motions for summary judgment.

hands. (R. at 249-253).

### iii.      Dr. Joseph Bernstein, M.D.

In August, 2004, Plaintiff also saw Dr. Joseph Bernstein, a Board-certified orthopedic surgeon hired by her worker's compensation insurance carrier, for an independent medical examination.  Based on review of her medical records and a medical examination, he concluded that Gonzalez had objective MRI evidence of lumbar disc disease in that it showed disc herniations at L3-L4 and L4-L5, which was consistent with her subjective complaints regarding bending and lifting, but that this diagnosis did not explain pain down her legs.  However, he noted the L4-L5 herniation abutted but did not compress the L5 nerve root.  Detailed neurological examination of both hands showed no deficits, he found no evidence of impairment in her cervical spine, and Plaintiff's cervical and thoracic MRI's looked grossly normal.  Thus, he also could not explain the pain in her arms and fingers. (R. at 275-78).

### iv.      Dr. J.T. Williams, Jr., M.D.

A Dr. J.T. Williams, Jr. examined Plaintiff on December 6, 2004.  He noted Ms. Gonzalez complained of neck and low back pain, headaches, and numbness and tingling in her right foot and both hands, and that multiple past epidural injections had not provided relief.  He conducted a physical exam, reviewed her MRIs, and prescribed Naproxen and physical therapy. (R. at 296-97).

### d.      Physical Therapy Notes

While Plaintiff was in physical therapy at Mercy Eastwick Rehabilitation in June through August of 2003, her therapist noted several times that Plaintiff's subjective complaints did not correlate with objective findings or with mechanism of injury. (R. at 164, 168, 173).

**II.      Contentions of the Parties**

In her Motion for Summary Judgment, Plaintiff asserts that the ALJ erred when he

discredited Plaintiff's subjective complaints of pain, because they were amply supported by

objective evidence and clinical findings, and Plaintiff's treating physicians.  She therefore argues

that the ALJ's hypothetical to the vocational expert ("VE") erroneous, as it did not set forth all

her limitations and improperly concluded she could perform a limited range of sedentary work.

(Pl.'s Mot. Summ. J. at 5)[3].

The Commissioner counters that the ALJ evaluated all the evidence in the record, and had

substantial evidence to conclude that the Plaintiff was not disabled.  First, she argues that the

ALJ properly found Gonzalez's subjective complaints less than fully credible, as they exceeded

the objective evidence and clinical findings of record.  Although the Commissioner did not

dispute that testing and examination that showed some impairment, she argued that the ALJ was

correct is finding these limitations did not preclude sedentary work.  Also, the Commissioner

contended that the ALJ did not misapply the treating physician rule.  Instead, the ALJ properly

attributed limited weight to the opinions of Dr. Rodos, Dr. Lam, and Dr. Revol, because their

conclusions were not supported by the objective medical evidence or their own examinations.

Accordingly, the question posed to the VE fairly set out all the limitations supported by the

record. (Resp.'s Mot. Summ. J. at 16-29).

**III.    Legal Standard**

The standard of review of an ALJ's decision is plenary for all legal issues.  <u>Schaudeck v.</u>

---

[3]Plaintiff's brief was not numbered.  However, the Court numbered it, and accordingly
cites the appropriate pages of Gonzalez' brief.

Comm'r of Soc. Sec. Admin., 181 F.3d 429, 421 (3d Cir. 1999).  The scope of the review of

determinations of fact, however, is limited to determining whether or not substantial evidence

exists in the record to support the Commissioner's decision.  Id.  As such, "[t]her Court is bound

by the ALJ's finding of fact if they are supported by substantial evidence on the record."

Plummer  v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Where "an agency's fact finding is

supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."

Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).  "Substantial evidence does

not mean a large or considerable amount of evidence but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Hartranft v. Apfel, 181 F.3d

358, 360 (3d Cir. 1999).

**IV.    Discussion**

      **A.    The Five-Step Sequential Analysis of Disability**

      In order to establish a disability under the Social Security Act, a claimant must

demonstrate that there is some "medically determinable basis for an impairment that prevents

him from engaging in any "substantial gainful activity" for a statutory twelve month period. 42

U.S.C. § 423(d)(2)(A); Stunkard v. Sec'y of HHS, 841 F.2d 57, 59 (3d Cir. 1988).  To determine

whether an individual is disabled, the regulations proscribe a five-step analysis. 20 C.F.R. §

404.1520(a); Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004).  The fact-finder must

determine: (1) if the claimant currently is engaged in substantial gainful employment; (2) if not,

whether the claimant suffers from a "severe impairment;" (3) if the claimant has a "severe

impairment," whether that impairment meets or equals those listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1, and thus are presumed to be severe enough to preclude gainful work; (4) whether

the claimant can still perform work she or she has done in the past ("past relevant work") despite the severe impairment; and (5) if not, whether the claimant is capable of performing other jobs existing in significant numbers in the national economy in view of the claimant's age, education, work experience and residual functional capacity ("RFC").  Id.  If there is an affirmative finding at any of steps one, two, four or five, the claimant will be found "not disabled." 20 C.F.R. § 404.1520(b)-(f).  See also Brown v. Yuckert, 482, U.S. 137, 140-42 (1987).  The Plaintiff carries the initial burden of demonstrating by medical evidence that she or she is unable to return to her or her former occupation.  Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).  Once the Plaintiff has done so, the burden shifts to the Commissioner to show the existence of substantial gainful employment the claimant could perform.  Id.

   **B.   The ALJ's Conclusions**

In reviewing the evidence in this case, the ALJ is to be commended for a thorough discussion of all the evidence.  He concluded that Plaintiff's lumbar disc disease, cervical disc disease with mild C5-C6 radiculopathy of the right extremity, moderate to severe carpal tunnel syndrome of the right upper extremity, headaches, obesity, mild depression disorder, and mild anxiety disorder were "severe" within the meaning of the Act. (R. at 56, 69).  Additionally, he found that this condition was severe enough to keep Plaintiff from doing her past relevant work as a housekeeper, but that Plaintiff's complaints that these conditions were totally disabling were "not fully credible." (R. at 59).  Instead, the ALJ found that she still had the residual functional capacity ("RFC") to perform "a significant range of sedentary work,"[4] with certain non-exertional

---

   [4]Sedentary work is defined as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing

limitations, including only occasional climbing, balancing, crouching or crawling, bending to

desk but not floor level, only occasional twisting of her neck, a five-minute sit/stand option at 30

minute intervals, restriction from frequent use of foot controls, no complex or detailed work, and

no fine dexterity work.  (R. at 67).  Based on this residual functional capacity, as well as the

vocational expert's testimony, and assuming all seven non-exertional limitations applied, the

ALJ concluded that Plaintiff was still capable of performing other jobs existing in significant

numbers in the national economy, including an automatic grinding machine operator, hand

packager, and/or table worker/inspector. (R. at 67-68).  Therefore, he found Ms. Gonzalez was

not "disabled" within the meaning of the Act. (R. 69).

**C.**     **Substantial Evidence Does Not Support the ALJ's Finding that Gonzalez was Not Disabled**

In reviewing the ALJ's decision, and after thorough examination of the evidence

contained in the record, the Court holds that the ALJ's findings were not based on substantial

evidence, principally because the ALJ did not follow Third Circuit cases requiring significant

weight to be given to the opinions of treating physicians.

**1.**     ***The ALJ erred by discounting Plaintiff's subjective complaints***

Plaintiff argues that it was improper for the ALJ to discredit her subjective complaints ,

because they were amply supported by numerous diagnostic tests, as well as by all her treating

physicians and by a state consultative physician.  (Pl.'s Mot. Summ. J. at 6-12; Pl.'s Reply at 1-

4).  The Defendant Commissioner counters that Gonzalez's subjective complaints exceeded the

objective medical evidence.  The Commissioner noted that although MRIs showed disc

---

is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are
required occasionally and other sedentary criteria are met.."  20 C.F.R. § 404.1567.

herniations, they were mild and/or minimal, as were the results of several doctors' examinations. Further, she noted that facet joint injections had proved effective and diminished Plaintiff's pain. In sum, although the Commissioner did not dispute that testing and examination that showed some impairment, she argued that the ALJ was correct is finding these limitations did not preclude sedentary work.  (Resp.'s Mot. Summ. J. at 16-22).

An ALJ must consider a claimant's subjective symptoms, including pain, which may not be discounted if reasonably consistent with the objective medical evidence and other evidence in the record.  Chrupcala v. Heckler, 829 F.2d 1269, 1275-76 (3d Cir. 1987); 20 C.F.R. § 404.1529. However, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence.  Plummer, 186 F.3d at 429; Mason v. Shalala, 99 F.2d 1058, 1066 (3d Cir. 1993).  Hence, an ALJ's credibility determinations are entitled to great deference and should not be discarded lightly, given his or her opportunity to observe an individual's demeanor.  See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). In this case, the ALJ's determination that Plaintiff's complaints are "not fully credible" (R. at 59) simply is not supported by the record.

First, the ALJ found that Plaintiff's range of activities of daily living (including caring for her children, driving them to school, driving to the store and to visit her mother, and cooking for her family) support his conclusion that Gonzalez' complaints are exaggerated.  (R. at 60). However, the ALJ failed to note that Plaintiff does not do laundry, vacuum, take out the trash or clean, has trouble bathing, and her daughter must help her get dressed.  Similarly, the meals she cooks for her kids are often TV-dinners that take less than five minutes, and the school she drives to is only two blocks away.  (R. at 29-31, 35, 38).  Contrary to the ALJ's conclusion, the

limitations on her activities to which Plaintiff testified actually tend to support rather than undermine her assertion that she is extremely limited by her ailments.

Second, the ALJ and the Commissioner's assertion that Plaintiff's complaints were not supported by objective medical evidence is belied by results from numerous diagnostic tests, which substantiate the subjective complaints of Gonzalez.  Two separate MRIs of the lumbar spine confirmed disc herniations and bulges at L3-L4 and L4-L5.  In fact, the second MRI showed progressive herniation. (R. at 199-200, 279).  The December 2004 x-ray also revealed degenerative discogenic disease at L3-L4. (R. at 295).  Regarding her arm numbness, EMG testing confirmed that the Plaintiff suffers moderate to severe carpal tunnel syndrome on the right side. (R. at 292-93).

Equally critically, while the ALJ attempts to downplay these findings as "mild" and/or "minimal," (R. at 62), his seemingly personal analysis is at odds with interpretation of the objective testing by all three of Plaintiff's treating physicians, as well as state examiner Dr. Buschiazzo, as discussed at length *infra*.  Although an ALJ's credibility determinations are generally entitled to great deference, we find this is an instance where the ALJ improperly discounted claimant's subjective symptoms when they were consistent with the objective medical evidence and other evidence in the record.  Chrupcala, 829 F.2d at 1275-76; 20 C.F.R. § 404.1529.

### 2.    *The ALJ discounted the treating physician rule*

Plaintiff also argues the ALJ erred in failing to accord significant enough weight to the opinions of her treating physicians, Drs. Lam, Rodos, and Revol. (Pl.'s Mot. Summ. J. at 10-13; Pl.'s Reply at 4-6).  The Commissioner counters that the ALJ properly attributed limited weight

to the opinions of these physicians because they were inconsistent with the medical evidence of record and their own examinations.  (Resp.'s Mot. Summ. J. at 22-27).

The Third Circuit has repeatedly noted that "a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000); Plummer, 186 F.3d at 429.  In fact, treating physician's opinions are afforded controlling weight if well-supported by diagnostic evidence and not inconsistent with other medical evidence in the record, and it is an error of law to reject the treating physician's opinion without adequate explanation. 20 C.F.R. § 404.1527; Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). "[G]reater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant." Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994).

Here, the opinions of Dr. Rodos and Dr. Lam that Gonzalez is unable to sustain work activity (contained in medical records and in functional capacity assessments)[5] are "not given any great weight," the ALJ having urged that they are conclusory and are not supported by the objective clinical findings of record. (R. at 64-65).  The ALJ also gives "little weight" to the state consultative evaluation and medical source statement completed by Dr. Buschiazzo, which he the ALJ asserted was not consistent with the doctor's own examination findings, those made by other physicians, or diagnostic test results. (R. at 62).

---

[5]Although the RFCs do not outright state that Plaintiff is unable to work, ALJ Newberger concedes that the RFCs are "essentially the same in that they both indicate inability to perform work activity on a full-time basis." (R. at 64-65).

However, although ALJ Newberger takes pains to thoroughly discount the opinions of all Plaintiff's treating physicians, both the state consultative doctors[6], and the diagnostic tests, it is not clear from his opinion which medical opinions, if any, he *does* give great weight.  The only assessments he discussed that could even be seen as contradicting the opinions of Plaintiff's treating physicians are those of Dr. Bernstein (hired by Plaintiff's worker's compensation insurer), Dr. Williams (the orthopedic specialist), and a physical therapist (who reported that Plaintiff's subjective complaints were not consistent with the mechanism of injury).  (R. at 60, 63, 64).  Therefore, we address each in turn.

To be sure, it was not error for the ALJ to consider Dr. Bernstein's assessment merely because it was generated as part of applying for worker's compensation, because this does not necessarily affect the reliability of his opinion.  Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984).  However, even Dr. Bernstein found that Ms. Gonzalez' objective MRI evidence of lumbar disc disease was consistent with her complaints about bending and lifting.  (R. at 277). Further, although the ALJ emphasized that Dr. Bernstein could not explain the pain in Plaintiff's arms and fingers (R. at 63) as though a lack of explanation conclusively established that Dr. Bernstein did not believe Plaintiff's complaints, the report says no such thing.  Further, Dr. Bernstein's negative findings concerning Plaintiff's arms and hands were later completely belied by the objective EMG results which confirmed moderate to severe carpal tunnel syndrome on her right side.  (R. at 292-93).

_____

[6] In addition to discounting Dr. Buschiazzo, as discussed below, the ALJ also rejected the opinion of Dr. Mary Ryczak, to the extent that she concluded that Plaintiff was capable of light exertion work, noting it was inconsistent with the record. (R. at 66, 215-22).  However, neither party disputes the ALJ's conclusion in this regard.

Similarly, nothing in Dr. Williams report undermines the essential conclusions contained in Dr. Rodos' and Dr. Lam's functional capacity assessments.  In fact, Dr. Williams noted that past epidural injections had not provided relief and, after examination, prescribed pain medication and physical therapy.  (R. at 296-97).

Finally, while the Commissioner is correct that the Social Security regulations allow an ALJ to consider evidence from other sources, such as physical therapists, 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1), the therapist's conclusions that Plaintiff's subjective complaints were not consistent with the mechanism of injury were reached before she had the benefit of diagnostic tests later undertaken.[7]  Moreover, it contravenes Third Circuit precedent to hold her opinion, when she is not a physician and only worked with Plaintiff for two months, and those of Drs. Bernstein and Williams, who merely examined Plaintiff once as consultants and did not treat her, above three treating physicians who treated Plaintiff over the course of many months and whose specific detailed findings were supported by evidence in the record.  Fargnoli, 247 F.3d at 43; Morales, 225 F.3d at 317; Plummer, 186, F.3d at 429.

With the principles articulated by the Third Circuit in mind — particularly that "greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant," Adorno, 40 F.3d at 47 — the Court concludes the ALJ impermissibly discounted the treating physician rule.  Although we agree with the Commissioner that an ALJ may reject a treating physician's conclusions if they are inconsistent with other

---

[7]The physical therapist worked with Plaintiff in June-August of 2003.  Plaintiff's first MRI, taken on July 13, 2003, revealed lumbar disc herniations and a July 21, 2003 cervical MRI showed disc bulging. (R. at 198-200).  All other tests were taken after Plaintiff ended physical therapy.

medical evidence in the record, here, we are not presented with a situation where there are material differences of opinion arising from evidence in the record.  In fact, *all* of Plaintiff's treating physicians reach conclusions that her limitations make it doubtful that she can perform substantial gainful employment.[8]  Drs. Rodos and Lam's opinion that Plaintiff can not lift/carry for than ten pounds, cannot stand/walk more than two hours or sit more than six hours in an eight hour workday, and that she has limited pushing, pulling, reaching and handling ability (R. at 280-86) is amply supported by an independent review by  Pennsylvania Bureau of Disability Determination by Dr. Buschiazzo,[9] as well as by the MRI and x-ray results.  Critically, no witness cited in the record — including the physical therapist, Dr. Bernstein or Dr. Williams — states an opinion that the diagnostic studies reveal only minor problems that would cause mild pain, as the ALJ seems to independently conclude when he stated that "the diagnostic studies [do not] support the assessments from Dr. Rodos and Dr. Lam." (R. at 65).[10]  Although portions of

---

[8]Dr. Rodos concluded outright that she was "unable to work." (R. at 261).  Further, although the RFCs completed by Drs. Rodos and Lam do not explicitly conclude that Plaintiff is unable to work, ALJ Newberger concedes that the RFC's are "essentially the same in that they both indicate inability to perform work activity on a full-time basis." (R. at 64-65).

[9]While not a treating physician, we also take issue with the ALJ's rejection of Dr. Buschiazzo's opinion as not consistent with his own examination findings, those made by other physicians or diagnostic test results.  (R. at 62).  To the contrary, Dr. Buschiazzo's medical source statement, essentially concluding Plaintiff was precluded from gainful employment, is consistent with those of both Dr. Rodos and Dr. Lam.  Further, while the ALJ's report emphasizes that Buschiazzo's exam results were "normal," to exemplify the lack of consistency with his own examination, in fact, Dr. Buschiazzo recorded that Plaintiff had *severe* limitation of motion on flexion extension in the lumbar region of thirty (30) degrees and *severe* restriction on range of motion and lateral flexion at five (5) degrees (Plaintiff indicates normal is ninety (90) degrees and twenty (20) degrees, respectively).  (R. at 208).

[10]Although consultative physician Mary Ryczak concluded that Plaintiff was capable of light exertion work (R. 215-22), her opinion can not be seen as supporting the conclusion that diagnostic testing showed Plaintiff was only minimally limited.  This is because, as the ALJ

the MRI results show "minimal" disc bulge and/or stenosis and "mild" mass effect, we are not convinced that a this equates with "mild" or "minimal" pain.  More importantly, because neither this Court nor the ALJ are medical professionals, it is inappropriate to draw such an inference.  Instead, we must look to the interpretations of record made by physicians.  In this case, based in part on the diagnostic results, Drs. Rodos and Lam concluded that Plaintiff had significant limitations which may, on remand, require a finding of disability.  Thus, it was error for the ALJ to afford minimal weight to the conclusions of Drs. Rodos and Lam when, as her treating physicians over a prolonged period of time, their opinions that Plaintiff likely cannot sustain substantial gainful employment should have been given great weight.  Morales, 225 F.3d at 317; Plummer, 186 F.3d at 429.

Further, while the ALJ explains the examinations conducted by Dr. Revol (R. at 64), he failed to mention that, based on the positive results of the EMG, the doctor found Plaintiff's right carpal tunnel syndrome severe enough to recommended surgery.[11]  He additionally failed to indicate what, if any, weight he was according to the doctor's opinion that Plaintiff's has a disabling condition in her right hand.  This also amounted to rejection of a treating physician's opinion without adequate explanation.  20 C.F.R. § 404.1527; Fargnoli, 247 F.3d at 43.

_____

properly noted, she proffered her opinion in January, 2004, before all but one test in the record had been conducted. (R. at 66).

[11]We reject the Commissioner's contention that Plaintiff's reliance on Dr. Revol's opinion is "misplaced" (Resp.'s Mot. Summ. J. at 25) simply because the doctor found negative results upon conducting a Phalen's test (a manual examination performed to diagnose carpal tunnel syndrome) on November 13, 2004.  Despite the negative test, Dr. Revol scheduled an EMG which, just five days later (on November 18, 2004), conclusively revealed moderate to severe carpal tunnel syndrome.  (R. at 292-93).

**3.**       ***The ALJ's Hypothetical Question to the Vocational Expert Did Not
             Properly Account for All of the Plaintiff's Functional Limitations***

At the fifth and final step of the analysis, Plaintiff challenges the sufficiency of the ALJ's

hypothetical to the VE.  She asserts the ALJ did not account for the severity of impairments,

which precluded all sedentary work. (Pl.'s Mot. Summ. J. at 13-15).  The Defendant

Commissioner counters that the ALJ's hypothetical questions to the VE were supported by

substantial evidence. (Resp.'s Mot. Summ. J. at 27-29).

Testimony of a VE constitutes substantial evidence for purposes of judicial review only

where the hypothetical question posed by the ALJ fairly encompasses *all* of an individual's

significant limitations that are supported by the record. Ramirez, 372 F.3d at 552; Chrupcala, 829

F.2d at 1276.  Further, "great specificity" is required when an ALJ incorporates a claimant's

limitations into a hypothetical.  Ramirez, 372 F.3d at 554-55 (citing Burns v. Barnhart, 312 F.3d

113, 122 (3d Cir. 2002)).

As discussed at length *supra*, the Court found Plaintiff's subjective complaints, supported

the results of diagnostics testing and by the opinions of her treating physicians, demonstrates that

Plaintiff has impairments that likely preclude performing substantial gainful employment.  While

the hypothetical incorporated multiple accommodations beyond the traditional definition of

sedentary work,[12] it did not reflect all of Plaintiff's functional limitations which were supported

---

[12]The ALJ posed two hypothetical questions to the VE - one with six limitations and a
second which added a seventh.  He first asked the VE whether Plaintiff would be able to perform
any unskilled sedentary exertion jobs if the following limitations were included: only occasional
climbing, balancing, crouching or crawling, bending to desk but not floor level, only occasional
twisting of her neck, a five-minute sit/stand option at 30 minute intervals, restriction from
frequent use of foot controls, and no complex or detailed work.  In the second hypothetical he
added no fine dexterity work.  In both situations, the VE concluded that Gonzalez could perform
several jobs existing in significant numbers in the national economy. (R. at 44-47, 67).

by the record.  Thus, the Court finds the VE's opinion deficient.  Therefore, the ALJ's conclusion that the Plaintiff is capable of performing certain jobs existing in significant numbers in the national economy was not based on substantial evidence.

## V.     Conclusion

For the foregoing reasons, this Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment will be denied and Plaintiff's Motion for Summary Judgment will be will be granted in part.  We will remand the case for further proceedings consistent with this opinion.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN GONZALEZ | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, Commissioner | : | NO. 05-4945 |
| of the Social Security Administration, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

AND NOW, this **24th** day of **August, 2006**, after careful and independent consideration of

the parties' cross-motions for summary judgment, and review of the record, it is hereby

ORDERED that:

1. The Plaintiff's Motion for Summary Judgment (Doc. No. 9) is GRANTED IN
   PART;

2. The Commissioner's Motion for Summary Judgment (Doc. No. 10) is DENIED;

3. Judgment will be entered in favor of Plaintiff and against Defendant;

4. The case is REMANDED to the Commissioner in accordance with the foregoing
   Memorandum.  This remand is ORDERED pursuant to the fourth sentence of 42
   U.S.C. § 405(g); and

4. The Clerk shall mark this case CLOSED.

**BY THE COURT:**

/s/ Lawrence Stengel
_____
**LAWRENCE STENGEL, U.S.D.J.**